IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| WILLIAM G. WOOD, *et al.*, | * | |
| Petitioners | * | |
| v. | * | CIVIL NO. JKB-15-3311 |
| UNITED STATES OF AMERICA, *et al.*, | * | |
| Respondents | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

William G. Wood ("Mr. Wood") brought a *pro se* "Petition to Quash 3rd Party Summons," purportedly on behalf of himself and a corporation, Seaside Seafood, Inc. ("Seaside Seafood") (together, the "Taxpayers"), with respect to certain summonses issued by the Internal Revenue Service ("IRS") to JPMorgan Chase Bank, N.A.; M&T Bank; the Bank of Glen Burnie; and Capital One Bank USA, N.A. (collectively, the "Summonses").[1] Mr. Wood named as Respondents the United States of America; IRS Commissioner John Koskinen (the "Commissioner"); and IRS Revenue Agent Jalal M. Abul-Huda ("Agent Abul-Huda") (collectively, "Respondents").[2]

---

[1] Mr. Wood appended copies of the Summonses to his Petition; he also appended copies of two summonses issued to Chex Systems Inc. ("Chex") (*see* ECF No. 1–1 at 10, 29). However, Mr. Wood made no reference to the Chex summonses in his Petition, and no party has discussed them in the subsequent briefing. The Court assumes that the Chex summonses are no longer at issue, and its Order shall have no force or effect as to them.

[2] Though Mr. Wood named the Commissioner and Agent Abul-Huda as Respondents, those individuals are not proper parties and shall therefore be TERMINATED from these proceedings. *See Brown v. United States*, No. 5:11-CV-143-D, 2011 WL 2470732, at \*1 n.1 (E.D.N.C. June 20, 2011) (observing that the United States is the only proper respondent in actions to quash IRS third-party summonses), *report adopted*, 2011 WL 4090931 (E.D.N.C. Aug. 15, 2011); *Putnam v. United States*, Civ. No. RWT-09-CV-1229, 2009 WL 2447944, at \*1 n.1 (D. Md. Aug. 4, 2009) (same).

Now pending before the Court is Respondents' Motion for Denial of Petition to Quash Third-Party Summonses and for Summary Enforcement of Summonses ("Motion to Enforce") (ECF No. 13). Mr. Wood has not opposed Respondents' motion and thus concedes all arguments presented therein. *See Stenlund v. Marriott Int'l, Inc.*, Civ. No. GJH-14-1544, 2016 WL 1203749, at *7 (D. Md. Mar. 22, 2016); *White v. Wal–Mart Stores, Inc.*, Civ. No. ELH-14-00031, 2014 WL 1369609, at *2 (D. Md. Apr. 4, 2014). Seaside Seafood, now represented by counsel, filed a response in opposition (ECF No. 14), and Respondents replied (ECF No. 16). The Court has reviewed the papers and has determined that no hearing is necessary, *see* Local Rule 105.6 (D. Md. 2014). For the reasons explained below, Respondents' Motion to Enforce shall be GRANTED IN PART, and the *pro se* Petition shall be DENIED.[3]

### I.   Legal Standards

Section 7602 of the Internal Revenue Code (the "Code") broadly authorizes the IRS to summon third parties having "possession, custody, or care of books of account" relating to a taxpayer and to require such third parties to "produce such books, papers, records, or other data . . . as may be relevant" to an audit of the taxpayer's return or to a determination of his liability. When the IRS summons a third party to produce documents, it is generally required to notify the taxpayer within three days after service of the summons but no later than twenty-three days before the date on which the documents are scheduled to be produced. I.R.C. § 7609(a). Thereafter, the taxpayer may bring an action in a United States District Court to quash the

---

[3] In so holding, the Court notes that counsel for Seaside Seafood neither signed the Petition nor sought leave to file a supplemental pleading. It is axiomatic that a "corporation may appear in the federal courts only through licensed counsel," *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993); *see also* Local Rule 101.1.a (D. Md. 2014) ("Individuals who are parties in civil cases may only represent themselves. . . . All parties other than individuals must be represented by counsel."). For this reason, the *pro se* Petition—which in any event is meritless—is null as to Seaside Seafood. *See Microsoft Corp. v. Comput. Serv. & Repair, Inc.*, 312 F. Supp. 2d 779, 780 (E.D.N.C. 2004) (recognizing that *pro se* defendant's purported answer on behalf of himself and corporation was "not valid as to the corporation"); *accord Perez v. Silva*, Civ. No. JKB-15-3484, 2016 WL 2625261, at *6 (D. Md. May 9, 2016). Nevertheless, the Court will address the arguments raised in Seaside Seafood's brief as the Court considers the merits of Respondents' Motion to Enforce.

third-party summons. § 7609(b)(2), (h).[4] If the taxpayer brings such an action, the Government may move to compel compliance with the third-party summons. *Id.*

The proceeding that follows is summary in nature. *United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014). The burden initially rests on the Government to show that "(1) the investigation is being conducted for a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the information sought is not already in the possession of the IRS; and (4) the administrative steps required by the Internal Revenue Code have been followed." *Conner v. United States*, 434 F.3d 676, 680 (4th Cir. 2006) (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964)). The Government's *prima facie* burden is "slight or minimal," *id.* (quoting *Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001)), and the Government may meet its burden through an affidavit by a revenue agent averring the *Powell* elements, *id.* (citing *Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987)); *see also Clarke,* 134 S. Ct. at 2367 ("[A]bsent contrary evidence, the IRS can satisfy [the *Powell*] standard by submitting a simple affidavit from the investigating agent.").

If the Government produces an appropriate affidavit or otherwise establishes a *prima facie* case for enforcement, the burden shifts to the taxpayer to disprove one or more of the *Powell* elements or to "show that the IRS is attempting to abuse the court's process" through

---

[4] The taxpayer must bring this action no later than twenty days after the IRS gives notice of the third-party summons. I.R.C. § 7609(b)(2)(A). Moreover, within that same twenty-day period, the taxpayer must send by registered or certified mail a copy of the petition to each person summoned and to the IRS office identified in the summons. § 7609(b)(2)(B). These procedural requirements are jurisdictional: should the taxpayer fail to comply with one or more of the requirements, the United States District Court lacks subject-matter jurisdiction to quash the summons. *See* Treas. Reg. § 301.7609–4(b)(3) (as amended in 2008). In this case, although Mr. Wood filed his *pro se* Petition well within the twenty-day window, it is not clear whether he complied with the section 7609(b)(2)(B) notice requirements. That said, the Government has neither contended that Mr. Wood failed to give proper notice nor raised any other jurisdictional arguments in its papers. The Court therefore infers that it has jurisdiction to consider the merits of Mr. Wood's Petition. *Cf. Cephas v. United States*, Civ. No. WDQ-13-1935, 2013 WL 5614298, at *1 n.2 (D. Md. Oct. 11, 2013) (assuming jurisdiction where government made "conflicting, equivocal statements about whether it was properly served"). Alternatively, even if the Court lacked jurisdiction over the Petition, it would still have authority to adjudicate the Government's Motion to Enforce. *See Bell v. United States*, 521 F. Supp. 2d 456, 459 (D. Md. 2007) (dismissing petition to quash for want of subject-matter jurisdiction but proceeding to consider the merits of government's motion to compel compliance with summons), *aff'd*, 275 F. App'x 221 (4th Cir. 2008) (per curiam).

summonses issued to harass the taxpayer, to coerce him to settle a collateral dispute, or for some other bad-faith purpose. *United States v. Stuart*, 489 U.S. 353, 360 (1989). The taxpayer's burden on rebuttal is onerous: he must prove a negative by disproving the "actual existence of a valid civil tax determination or collection purpose." *Tillman v. United States*, Civ. No. ELH-13-2413, 2014 WL 1379293, at *2 (D. Md. Apr. 8, 2014) (quoting *Alphin*, 809 F.2d at 238). "If the [taxpayer] cannot refute the government's prima facie case or cannot factually support a proper affirmative defense, 'the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing.'" *Alphin*, 809 F.2d at 238 (citation omitted). Moreover, the court "should not allow discovery at this stage unless the taxpayer makes a preliminary demonstration of abuse." *Id.*; *cf. Clarke*, 134 S. Ct. at 2367 (holding that a taxpayer is entitled to examine an IRS agent only where the taxpayer can "point to specific facts or circumstances plausibly raising an inference of bad faith"; clarifying that "[n]aked allegations of improper purpose are not enough" and that the "taxpayer must offer some credible evidence supporting his charge").

    *II. Analysis*

In this case, the Government has produced a declaration by Agent Abul-Huda averring the *Powell* elements. With respect to prong one (*i.e.*, proper purpose), Agent Abul-Huda averred that it is "necessary to obtain the testimony and to examine the books, papers, records, or other data sought by the [S]ummonses in order to properly investigate the income tax liability of [the Taxpayers] for the taxable years 2009, 2010, 2011, 2012, and 2013." (ECF No. 13–2 at 3.) This simple attestation is sufficient for purposes of the Government's *prima facie* case. *See Putnam v. United States*, Civ. No. RWT-09-CV-1229, 2009 WL 2447944, at *1 (D. Md. Aug. 4, 2009). Moreover, Seaside Seafood conceded in its brief that the Government "has made a *prima facie* showing of a proper purpose for the Summons[es]." (ECF No. 14 at 5.) As for Mr. Wood, he

did not respond to the Government's Motion to Enforce, and none of his unsubstantiated, conclusory allegations in his Petition raise a plausible inference of IRS misconduct.[5]  The IRS acted with a proper purpose; *Powell* prong one is satisfied.

With respect to prong two (*i.e.*, relevance), the documents that the IRS has requested—which include bank statements, copies of loan applications, and credit card records for the tax years in question—are indisputably germane to Agent Abul-Huda's investigation of the Taxpayers' liability.  This is particularly so given that Code section 7602(a)(2) authorizes the IRS to obtain records that "*may be* relevant or material" to an audit (emphasis added).  "The language 'may be' reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to . . . admissibility."  *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984); *see also United States v. Richards*, 631 F.2d 341, 345 (4th Cir. 1980) ("[P]rior to judicial enforcement, the court must conclude that there is a realistic expectation that the information called for by the summons will throw light upon the [taxpayer's] federal tax liability.").  In its brief, Seaside Seafood contends that Agent Abul-Huda's declaration "does not contain a statement or averment of how the documents and records sought by the [S]ummonses are relevant to [his] investigation."  (ECF No. 14 at 5-6.)  Seaside Seafood then cites *Sylvestre v. United States*, 978 F.2d 25, 27 (1st Cir. 1992) (per curiam), a case in which a revenue agent attested that the bank records he sought were "relevant for the purpose of reconstructing income received."  While Agent Abul-Huda did not make such

---

[5] Mr. Wood asserted that Agent Abul-Huda "is using the summons power to harass and pressure Woods [*sic*], for reasons unknown to Woods [*sic*] at this time, and for purposes that are wholly illegitimate to the spirit and intent of the law"; he added that "no law or other authority was cited as the ostensible authority for issuance of the Summons[es]." (ECF No. 1 ¶ 9.)  Such unadorned allegations of bad faith, unaccompanied by so much as a declaration or an affidavit, are insufficient to rebut the Government's *prima facie* case.  *See Cephas*, 2013 WL 5614298, at *2 (holding that "bare allegations of improper purpose, unsupported by facts," are inadequate to rebut the government's *prima facie* showing of a proper purpose).  Moreover, Mr. Wood's contention that the Summonses identify no legal authority is demonstrably false:  each Summons includes citations to Code section 7609 and the related Treasury regulation. (*See* ECF No. 15 at 1, 5, 10, 14, 18, 22.)

an explicit statement, his declaration—read alongside the detailed Summonses themselves—demonstrates that he sought to review financial records for the purpose of ascertaining the Taxpayers' income for the years in question. Seaside Seafood acknowledges that the requested documents "*may* be relevant to the IRS's investigation" (ECF No. 14 at 6), and controlling authority in this Circuit requires nothing more: the Court will not superimpose a hypertechnical "magic words" requirement onto the *Powell* framework. *See Putnam*, 2009 WL 2447944, at *2 (relevancy requirement was satisfied where "requested records include[d] bank statements, deposited items, cancelled checks, copies of cash transaction reports, and loan applications," and where such records could "show the sources and amount of income that [taxpayer] received"); *Matchwood Found. v. United States*, Civ. No. L-09-665, 2009 WL 2009041, at *2 (D. Md. Apr. 30, 2009) (relevancy requirement was satisfied where agent declared that summoned documents would "shed light on the taxpayers' federal income tax liabilities for the years" in question); *Dorsey v. United States*, Civ. No. L-03-1140, 2004 WL 424508, at *2 (D. Md. Jan. 14, 2004) (relevancy requirement was satisfied where summoned documents would "reflect the receipt of income" by taxpayer and "would certainly be relevant to determining [taxpayer's] tax liabilities"). Likewise here, the requested bank statements and related documents are relevant to Agent Abul-Huda's investigation, and *Powell* prong two is satisfied.

With respect to prong three (*i.e.*, no summonses for records already in IRS possession), Agent Abul-Huda admitted that the IRS previously acquired a small subset of the requested documents—specifically, bank statements from 2010–12 for certain accounts owned by Seaside Seafood at JPMorgan Chase Bank, N.A. and the Bank of Glen Burnie. (*See* ECF No. 13–2 at 2.) Respondents have also supplied a declaration by Agent Abul-Huda's predecessor, Revenue Agent Julia Garland ("Agent Garland"), wherein Agent Garland acknowledged that she obtained

these 2010–12 statements from the Taxpayers' accountant and transferred the files to Agent Abul-Huda when she left her position in July 2015. (ECF No. 16–2.)[6] Apart from this small subset of documents, Agent Abul-Huda avers that the "books, papers, records, or other data sought by the [S]ummonses . . . are not already in the possession of the Internal Revenue Service." (ECF No. 13–2 at 3.) Once again, the Taxpayers have failed to rebut Agent Abul-Huda's attestation.[7] In this situation, where some careful tailoring would bring the Summonses into full compliance with *Powell*, it would be gratuitous (and profoundly inefficient) to quash the Summonses in their entirety simply because, as drafted, they are slightly overbroad. The Court is "vested with considerable authority to modify a summons prior to enforcement," *Richards*, 631 F.2d at 346; *see also Worsham v. U.S. Dep't of the Treasury*, Civ. No. ELH-12-2635, 2013 WL 5274358, at *18 (D. Md. Sept. 17, 2013) (where government conceded that it had custody of certain summoned records, court enforced summonses with respect to remaining records). Accordingly, the Court will craft an Order enforcing the Summonses *but only* to the

---

[6] Seaside Seafood contends that Agent Garland also obtained copies of the 2010–12 M&T Bank and Capital One Bank USA, N.A. records (ECF No. 14 at 9); Mr. Wood made a similar statement in his Petition (ECF No. 1 ¶ 9). But neither Taxpayer has supplied an affidavit or adduced any objective evidence tending to discredit Agent Garland's declaration that she only obtained the records from JPMorgan Chase Bank, N.A. and the Bank of Glen Burnie. Unsworn allegations will not defeat a properly executed declaration by a revenue agent who participated in the audit of the Taxpayers' returns. *See United States v. McHenry*, 552 F. Supp. 2d 571, 575-76 (E.D. Va. 2008) (where agent averred that IRS did not possess information sought by summons, taxpayer's "contrary assertion [was] insufficient to rebut the IRS's *prima facie* case").

[7] Seaside Seafood devotes the bulk of its discussion on *Powell* prong three to distinguishing a pair of cases that the Government did not cite in its brief—*Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985), and *Martin v. United States*, No. 14cv2493 DMS (DHB), 2015 WL 3606069 (S.D. Cal. May 7, 2015). In these cases, courts departed from the usual rule and *enforced* summonses for documents previously produced to the IRS. But *Tiffany Fine Arts* and *Martin* are of limited utility here, because the Court has determined that it will narrow the Summonses so as to exclude Agent Abul-Huda's requests for duplicates.

    Seaside Seafood separately contends that the Taxpayers' accountant made the subject records available to the IRS "at his office," seemingly suggesting that third-party summonses are discovery devices of last resort. (*See* ECF No. 14 at 9.) But that is not the law: on the contrary, Code section 7602(a)(2) authorizes the IRS to summon "*any* person having possession, custody, or care of books of account containing entries relating to the business of the [taxpayer]" (emphasis added).

extent that they request documents not already in IRS custody, thereby achieving a result that is congruent with *Powell* prong three.[8]

Finally, with respect to prong four (*i.e.*, administrative compliance), Agent Abul-Huda averred that "[a]ll administrative steps required by the Internal Revenue Code for issuance of a summons have been taken." (ECF No. 13–2 at 3.) He also recounted that he "served attested copies of the [S]ummonses . . . on the summonsed third parties via certified mail," in accordance with Code section 7603(b), and that he served notice on the Taxpayers via certified mail, in accordance with Code section 7609(a). (*Id.* at 2.) Such averments are sufficient to make out a *prima facie* showing of administrative compliance. *See Putnam*, 2009 WL 2447944, at *2 (administrative-compliance element was satisfied where agent declared that he was "authorized to issue summonses, that he served an attested copy on each bank, and that he gave notice of the summonses to [taxpayer]"); *Matchwood Found.*, 2009 WL 2009041, at *2 (administrative-compliance element was satisfied where agent declared that "[a]ll administrative steps required by Title 26 of the United States Code for the issuance of a summons have been followed" (alteration in original)). Critically, nothing in either Mr. Wood's Petition or Seaside Seafood's brief casts the slightest doubt on Agent Abul-Huda's attestation. Mr. Wood complained that the Summonses "fail[ed] to state any liability, actual or ostensible[,] for which purpose the [S]ummons[es] may have been issued" (ECF No. 1 ¶ 10)—but his assertion is once again demonstrably false, as each Summons identifies the tax form series (1040 or 1120S) and the tax years in question.[9] Seaside Seafood passingly asserts that its "accountant . . . was not

---

[8] The Government acknowledged that it would "not object to an Order from this Court . . . excluding from production . . . the records listed in paragraph 6 of Revenue Agent Abul-Huda's Declaration," *i.e.*, the 2010–12 JPMorgan Chase Bank, N.A. and Bank of Glen Burnie statements. (ECF No. 16 at 5 n.4.)
[9] In framing this particular challenge to the Summonses, Mr. Wood cited two superseded provisions of the *Internal Revenue Manual*; a Treasury regulation that has nothing to do with third-party summonses; and two Code sections (sections 7602(a) and 7609(a)(3)), neither of which requires the IRS to include the "actual or ostensible" liability on

provided notice prior to the [S]ummonses being served on third parties as required by 26 U.S.C. §7602 [*sic*]" (ECF No. 14 at 10)—but neither section 7602 nor the regulations promulgated thereunder require the IRS to notify a taxpayer's accountant in advance of serving third-party summonses.[10] *See Bodensee Fund, LLC v. United States*, Civ. No. 07-3209 (MLC), 2008 WL 4490361, at *7 (D.N.J. Sept. 30, 2008) ("Internal Revenue Code § 7602 does not . . . require the IRS to notify taxpayers' representatives when issuing third-party summonses."); *cf.* Treas. Reg. § 601.506(a)(3) (as amended in 1991) ("Failure to give notice or other written communication to the recognized representative of a taxpayer will not affect the validity of any notice or other written communication delivered to a taxpayer."). Because the Taxpayers here have neither adduced evidence nor, for that matter, presented any viable allegations tending to discredit Agent Abul-Huda's declaration of administrative compliance, *Powell* prong four is satisfied.

---

the face of the summons. Section 7609(a)(3), in particular, simply provides that the summons must identify the taxpayer and provide sufficient information such that the summoned party may locate the requested records.

[10] Code section 7602(c)(1) does provide that the IRS "may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance *to the taxpayer* that contacts with persons other than the taxpayer may be made" (emphasis added). Courts generally construe this requirement as distinct from the section 7609(a) requirement that the IRS must notify the taxpayer within three days after serving a third-party summons. *But see Scharringhausen v. Comm'r*, 104 T.C.M. (CCH) 795, 798 n.9 (2012) ("Clearly, if respondent met the requirement under [section] 7609(a), he would also meet the requirement under [section] 7602(c)(1) that he provide reasonable advance notice to petitioner before making contacts with third parties."); *see also Thompson v. United States*, Civ. No. H-08-1277, 2008 WL 4279474, at *7 n.5 (S.D. Tex. Sept. 11, 2008) (opining that the IRS "complied with the administrative procedures required by the Internal Revenue Code" where it gave the taxpayer notice of a summons within the three-day window prescribed by Code section 7609(a)); *Bull D, S.A. de C.V. v. United States*, 487 F. Supp. 2d 772, 776-77 (W.D. Tex. 2007) (same); *cf.* Treas. Reg. § 301.7602–2(d)(2) (2002) ("Pre-contact notice under [Code section 7602] need not be provided to a taxpayer for third-party contacts of which advance notice has otherwise been provided to the taxpayer pursuant to another statute, regulation or administrative procedure.").

While Agent Abul-Huda does not specifically aver that he (or his predecessor, Agent Garland) notified the Taxpayers in advance of possible third-party contacts, neither does he concede that he failed to provide such notice—and the Taxpayers have neither attested nor even alleged that the IRS violated this requirement. It is standard operating procedure for the IRS to notify a taxpayer, typically via IRS Publication 1, "that third parties may be contacted during the course of [an] examination," IRM 4.11.57.4.1.1 (Dec. 20, 2011). And courts have repeatedly held that such notice satisfies section 7602(c)(1). *See, e.g.*, *Gandrup v. United States*, Misc. No. 14-123-SLR, 2014 WL 5861719, at *2 (D. Del. Nov. 12, 2014); *Hunkler v. United States*, No. 2:13-mc-00040, 2014 WL 1382533, at *3 (S.D. Ohio Apr. 8, 2014), *report adopted*, 2015 WL 619324 (S.D. Ohio Feb. 10, 2015); *Peterson v. United States*, Civ. No. 2:11-cv-3064-JD, 2012 WL 682346, at *4 (E.D. Pa. Mar. 2, 2012); *Mazzaferro v. United States*, No. C-10-80156-MISC SBA, 2011 WL 499972, at *8 (N.D. Cal. Feb. 8, 2011). Because the Taxpayers in all likelihood received proper notice, and because—in any event—they have cast no doubt on Agent Abul-Huda's attestation that "[a]ll administrative steps required by the Internal Revenue Code for issuance of a summons have been taken" (ECF No. 13–2 at 3), the Court finds fourth *Powell* element satisfied.

### III. *Conclusion*

In light of the foregoing, the Court concludes that the Government has carried its *prima facie* burden under *Powell* and progeny. The Taxpayers have neither rebutted the Government's *prima facie* case nor otherwise demonstrated that the IRS is "attempting to abuse the court's process," *Stuart*, 489 U.S. at 360. The Taxpayers have not carried their heavy burden of "disproving the actual existence of a valid civil tax determination or collection purpose," nor have they alleged "specific facts . . . supported by affidavits, from which the court can infer a possibility of some wrongful conduct by the IRS," *Alphin*, 809 F.2d at 238. Under such circumstances, further evidentiary review is wholly unnecessary. Instead, an Order shall enter DENYING Mr. Wood's *pro se* Petition; GRANTING IN PART Respondents' Motion to Enforce; ENFORCING the Summonses to the extent that they request documents not already in the custody of the IRS; and CLOSING THIS CASE.

DATED this 27th day of May, 2016.

                                                        BY THE COURT:

                                              _____/s/_____
                                              James K. Bredar
                                              United States District Judge